UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| **LINDA PAUWELS,** <br><br> *Plaintiff*, <br><br> v. <br><br> **ALLIED PILOTS ASSOCIATION** <br> 14600 Trinity Blvd. Ste. 500 <br> Fort Worth, TX 76155-2559, <br><br> Serve Registered Agent: <br><br>   Patrick Clark <br>   APA Secretary-Treasurer <br>   14600 Trinity Blvd. Ste. 500 <br>   Fort Worth, TX 76155-2559 <br><br> *Defendant.* <br><br> **AMERICAN AIRLINES, INC.** <br> 1 Skyview Dr. #MD8B401 <br> Fort Worth, TX  76155, <br><br> Serve Registered Agent: <br><br>   Corporation Service Company <br>   211 E 7th Street Suite 620 <br>   Austin, TX  78701 <br><br> *Defendant.* | Civil Action No. 4:23-CV-00851-OA |

**PLAINTIFF'S SECOND AMENDED CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Linda Pauwels brings this second amended civil complaint against Defendants

Allied Pilots Association ("APA") for violations of Title VII of the Civil Rights Act of 1964, 42

1

U.S.C. § 2000(e), *et seq.* ("Title VII"),[1] and American Airlines, Inc. ("AA") for unlawful failure to accommodate in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), discrimination on the basis of disability in violation of the ADA, retaliation in violation of the ADA, retaliation in violation of Title VII, and discrimination on the basis of sex in violation of Title VII.

## PARTIES

1. Plaintiff Linda Pauwels is domiciled in Dallas, Texas.

2. Defendant APA is an independent pilot union with its headquarters and principal place of business in Fort Worth, Tarrant County, Texas. It can be served through its registered agent for service of process, Patrick Clark, APA Secretary-Treasurer, 14600 Trinity Boulevard, Suite 500, Fort Worth, Texas, 76155-2559.

3. Defendant AA is a Delaware corporation that has its principal place of business in Fort Worth, Texas. It can be served through its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas, 78701.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), and Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").

5. Jurisdiction is proper because Plaintiff has exhausted her administrative

---

[1] Following the Court's February 14 Order dismissing Counts I and IV from Pauwels' First Amended Complaint, those Counts are removed here. Plaintiff reserves all rights with respect to these dismissed claims and Plaintiff does not intend to waive them by making conforming edits to this her Second Amended Complaint.

2

remedies.

6. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Fort Worth Human Relations Commission. On or around September 8, 2023, the EEOC issued the Plaintiff Notice of Right to Sue.

7. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission Dallas Field Office ("EEOC") on or about December 15, 2023. On or about January 30, 2024 the EEOC issued the Plaintiff Notice of Right to Sue.

8. This Court has personal jurisdiction over Defendant APA because it has regular contacts with Texas and regularly transacts business in this judicial district.

9. This Court has personal jurisdiction over Defendant AA because it has regular contacts with Texas and regularly transacts business in this judicial district.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the unlawful employment practices occurred within this judicial district, which was the primary location of Plaintiff's union membership with Defendant APA and Plaintiff's employment with Defendant AA.

## FACTUAL ALLEGATIONS

11. American Airlines, Inc. ("AA") hired Pauwels as a pilot in or about 1988.

12. The APA represents all AA pilots, Pauwels included.

13. Pauwels' physicians diagnosed her in or around 2004 with an endocrine autoimmune condition, as well as other secondary diseases.

14. Pauwels took medical disability leave in or around 2004 because of her conditions, and she remained on leave until in or about 2012 when she returned to work at AA.

15. In 2012, Pauwels filed an EEOC charge on the basis of gender discrimination against both AA and the APA.

16. In 2016, the EEOC found in Pauwels' favor that there was discrimination on the basis of gender, issuing a letter of determination. Pauwels settled with AA and the APA.

17. Pauwels became a Check Airman for AA in or around 2015. A Check Airman is a pilot who is authorized by the airline and the Federal Aviation Administration (FAA) to conduct training and evaluation of line pilots.

18. In the summer of 2021, Pauwels was a witness in an investigation triggered by an internal complaint alleging that three Check Airmen mistreated a pilot during training at the AA flight academy because of her gender.

19. AA failed to redact Pauwels' name in the investigation hearing notice sent to APA and Captain John Darrah, the Chairman of the APA Check Airman Committee. Because of this, Darrah called Pauwels and asked why she was a witness in the investigation and what she testified. Pauwels told Darrah that she could not discuss the matter further.

20. On January 26, 2022, returning from scheduled time off, Pauwels received a call from scheduler Kashinda Pullen asking her to do an FAA rating ride for students. Pauwels did the assignment because there was no other examiner available to take it.

21. On the same day, Darrah accused Pauwels of taking an illegal assignment and willfully violating her contract by working while on FMLA leave. Darrah based his allegations on an incorrect paper copy of the schedule.

22. On January 28, 2022, Pauwels experienced an exacerbation of her underlying auto-immune condition and received a subsequent diagnosis of post viral fatigue due to the stress caused by Darrah's false accusations.

23. Darrah requested an audit investigation of Pauwels' schedule and excluded Pauwels from communications with management about Pauwels' schedule.

24. Pauwels emailed APA Senior Legal Director Jim Clark requesting Darrah recuse himself from the investigation, but Darrah refused to recuse himself and APA refused to step in.

25. On January 31, 2022, after the investigation, Nancy Hall Bolin confirmed that she had distributed an incorrect copy of Pauwels' schedule. The audit investigation further confirmed that Pauwels was legal to accept the assignment.

26. On April 5, 2022, Pauwels requested AA conduct an official investigation into violations of work environment policies; discrimination on the basis of gender and disability; bullying/intimidation; retaliation; and concern for personal safety.

27. Based on past practice, Captain Ed Sicher, Chairman of Pauwels' then domicile in Miami, asked that Pauwels be placed on paid withheld ("PW") status beginning January 28, 2022, pending investigation. That request was denied.

28. On April 24, 2022, a member of the Check Airman Committee informed Pauwels that APA would appeal to reopen and review the legality of Pauwels' job assignment on January 26, 2022. To Pauwels' knowledge, no other check airmen had their schedules or FMLA uses scrutinized to the extent that Pauwels' have been scrutinized.

29. On April 25, 2022, Sicher emailed the APA to request an independent investigation for Pauwels' allegation of discrimination and harassment based on gender and disability, as well as retaliation. APA has not responded to the request to this date.

30. In June 2022, Pauwels filed charges against both AA and APA for discrimination based on disability and gender, as well as for retaliation.

5

31. On September 13, 2022, Pauwels took part in an EEO mediation and settled all charges with AA.

32. On or around July 1, 2022, Pauwels submitted her first accommodation request to her managing director of flight training and standards, Captain Lori Cline. AA then advised Pauwels to submit her accommodation request through AA's centralized online ADA procedure, which she did.

33. APA representative Captain John Karam helped Pauwels draft a request for accommodation for Joint Collective Bargaining Agreement ("JCBA") scheduling flexibility while maintaining the Check Airman qualifications she already had. Specifically, Pauwels requested to return to duty from medical leave as a line pilot (a line pilot's main duty is to transport cargo and passengers to their destination safely) for scheduling purposes, but retain her Check Airman status and FAA Aircrew Program Designee ("APD") status under the Temporary Check Airman provision supplement to the JCBA (Supp O). Pauwels' medical need for these accommodations was for the management of fatigue deriving from her medical condition.

34. On or around August 17, 2022, Wesley Meyer, an attorney with the APA, advised AA that the APA would not object if AA granted Pauwels' accommodation request.

35. On or around November 21, 2022, Pauwels obtained FAA First Class medical certification and returned from medical leave, subsequently undergoing training to regain her Check Airman qualifications, including APD.

36. AA failed to engage in any interactive process regarding Pauwels' request for accommodation and failed to respond to repeated update requests.

37. On or around April 20, 2023, Pauwels met with AA managers Captain Alan Johnson and Jessica Alvaredo, who told Pauwels that AA denied her accommodation request

after the APA advised that it no longer supported Pauwels' accommodation.

38. AA refused to provide Pauwels with an explanation for its denial of her request for accommodation.

39. Because of AA's and APA's actions, Pauwels returned to line pilot status with no accommodations to maintain the Check Airman qualifications that she worked for years to obtain.

40. AA unlawfully failed to accommodate Pauwels' disability in violation of the ADA which makes it unlawful for an employer to fail to make reasonable accommodations for an employee with a disability who is able to perform the essential functions of the position.

41. AA discriminated against Pauwels on the basis of sex (female) and disability when it denied her request for accommodation.

42. AA discriminated and retaliated against Pauwels for her participation in protected activities including past EEO discrimination charges.

43. APA refused to provide Pauwels an explanation with regard to the revocation of its support for her accommodation request, even though the APA was aware of and had not objected to similar accommodations for male pilots that allowed the pilots to maintain their statuses while they were unable to work due to medical issues and disabilities. These male APA members include, but are not limited to, Robert Glathe and William Ausley.

44. Pauwels has sustained economic damages and mental anguish because of AA's and APA's illegal acts, and she will continue to sustain damages into the future.

## COUNT II[2]
### Discrimination (Sex) as against Defendant APA
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000(e), *et seq*.

45. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

44. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 2000e *et seq*.

45. APA is an "employer" as the term is defined in 42 U.S.C. § 2000e *et seq*.

46. To establish a *prima facie* case of discrimination under Title VII, Pauwels must show that she: (1) belongs to a protected class; (2) was qualified for the position; (3) experienced adverse employment action; and (4) was similarly situated to other employees who were not members of her protected class and who were treated more favorably." *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (citing *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)

47. Pauwels is a female, and therefore a member of a protected class.

48. Pauwels was qualified for her position. Pauwels received positive performance evaluations and has continued to rise up the ranks throughout her career, becoming the first woman to hold a position as Boeing 787 Lead Check Airman at AA.

49. Pauwels suffered an adverse employment action when Darrah falsely accused Pauwels of illegally taking an assignment during FMLA leave, when Darrah, acting as APA Check Airman Committee Chair, requested that American Airlines conduct a forensic audit of Pauwels' schedule, and when APA failed to recuse Darrah from the matter.

---

[2] As previously noted, Count I was dismissed by the Court in its Order of February 14, 2024, and so as to avoid confusion Plaintiff keeps the numbering of her prior counts.

50. To Pauwels' knowledge, no other male check airmen had their schedules or FMLA uses scrutinized to the extent Pauwels' were.

51. Pauwels suffered an adverse employment action when APA reversed its position and objected to Pauwels' accommodation request.

52. APA was aware of and had not objected to similar accommodations for male pilots that allowed the pilots to maintain their statuses while they were unable to work due to medical issues and disabilities.

53. Pauwels was subject to the adverse employment decisions above on account of her Sex.

54. Pauwels has suffered damages because of APA's discrimination.

55. Any reason that APA would give for its actions would be not legitimate or non-discriminatory, and would be pretext to cover up APA's discrimination of Pauwels.

**COUNT III**
**Retaliation as against Defendant APA**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000(e),** *et seq.*

56. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

57. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 2000e *et seq*.

58. APA is an "employer" as the term is defined in 42 U.S.C. § 2000e *et seq*.

59. To prevail on an unlawful retaliation claim, Pauwels must establish: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Thomas v. Trege*, 913 F.3d 458, 463 (5th Cir. 2019).

60. Pauwels engaged in protected conduct when she filed a charge of discrimination against the APA and AA in 2012.

61. Pauwels engaged in protected conduct when Pauwels was a witness in a fellow female pilot's case regarding gender discrimination by three male Check Airmen.

62. Pauwels engaged in protected conduct when she filed a charge of discrimination against the APA and AA in June 2022.

63. APA took adverse employment actions against Pauwels when Darrah falsely accused Pauwels of illegally taking an assignment during FMLA leave, when Darrah and APA conducted an investigation into the matter, and when APA failed to recuse Darrah from the matter.

64. APA took adverse employment actions against Pauwels when APA reversed its position and objected to Pauwels' accommodation request.

65. There is a causal connection between Pauwels' protected activity and APA's adverse employment actions.

66. APA was aware of Pauwels' protected conduct.

67. AA failed to redact Pauwels' name in the investigation hearing notice sent to Darrah.

68. Darrah subsequently questioned Pauwels for being a witness in a fellow female pilot's case regarding gender discrimination and began to belittle Pauwels by falsely accusing Pauwels of illegally taking an assignment during FMLA leave.

69. APA facilitated Darrah's actions by refusing to recuse Darrah and initiating a second investigation into Pauwels' schedules and use of FMLA leave without any evidence.

70. The denial of Pauwels' accommodation occurred after Pauwels filed EEOC charges in June 2022.

71. Pauwels has suffered damages as a result of APA's retaliation.

### COUNT V
### Failure to Accommodate as against Defendant AA
### Violation of the Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101 *et seq.*

82. Pauwels hereby incorporates the allegations in the foregoing paragraphs as though alleged herein.

83. Defendant AA unlawfully failed to accommodate Plaintiff's disability.

84. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, makes it unlawful for an employer to fail to make reasonable accommodations for an employee with a disability who is able to perform the essential functions of the position.

85. Plaintiff is a disabled individual under the ADA.

86. Plaintiff is a qualified individual under the meaning of the statute.

87. Defendant failed to accommodate Plaintiff when it denied Plaintiff's reasonable accommodation request.

88. As a result of Defendant's violation Plaintiff has suffered loss of income, loss of her career, damage to her professional and personal reputation, mental anguish and other economic and compensatory damages; she will continue to suffer these damages into the future.

### COUNT VI
### Discrimination (Disability) as against Defendant AA
### Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101 *et seq.*

89. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

90. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 12101 *et seq.*

91. AA is an "employer" as the term is defined in 42 U.S.C. § 12101 *et seq*.

92. To establish a *prima facie* case of discrimination under ADA, Pauwels must show that she: (1) has a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of her disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

93. Pauwels has a disability as she has been diagnosed with an autoimmune disorder. and other secondary diagnoses.

94. Pauwels was qualified for her position. Pauwels received positive performance evaluations and has continued to rise up the ranks throughout her career, becoming the first woman to hold a position as Boeing 787 Lead Check Airman at AA.

95. Pauwels suffered an adverse employment action when AA denied her request for an accommodation.

96. Pauwels was subject to the adverse employment decisions above on account of her disability.

97. Pauwels has suffered damages because of AA's discrimination.

98. Any reason that AA would give for its actions would be not legitimate or non-discriminatory, and would be pretext to cover up AA's discrimination of Pauwels.

**COUNT VII**
**Retaliation as against Defendant AA**
**Americans with Disabilities Act of 1990**
**42 U.S.C. § 12101 *et seq.***

99. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

100. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 12101 *et seq*.

101. AA is an "employer" as the term is defined in 42 U.S.C. § 12101 *et seq*.

102. To prevail on an unlawful retaliation claim, Pauwels must establish: (1) she participated in an activity protected by the ADA; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Thomas v. Trege*, 913 F.3d 458, 463 (5th Cir. 2019).

103. Pauwels engaged in protected conduct under the ADA when she requested an accommodation.

104. AA took adverse employment actions against Pauwels when AA denied her request for an accommodation causing Pauwels to give up her Check Airman status.

105. There is a causal connection between Pauwels' protected activity and AA's adverse employment actions.

106. AA was aware of Pauwels' protected conduct.

107. Pauwels has suffered damages as a result of AA's retaliation.

108. Pauwels was subject to the adverse employment decisions above on account of her protected activity.

109. Any reason that AA would give for its actions would be not legitimate or non-retaliatory, and would be pretext to cover up AA's retaliation against Pauwels.

## COUNT VIII
### Discrimination (Sex) as against Defendant AA
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000(e), *et seq.*

110. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

111. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 2000e *et seq*.

112. AA is an "employer" as the term is defined in 42 U.S.C. § 2000e *et seq*.

113. To establish a *prima facie* case of discrimination under Title VII, Pauwels must show that she: (1) belongs to a protected class; (2) was qualified for the position; (3) experienced adverse employment action; and (4) was similarly situated to other employees who were not members of her protected class and who were treated more favorably." *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (citing *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)

114. Pauwels is a female, and therefore a member of a protected class.

115. Pauwels was qualified for her position. Pauwels received positive performance evaluations and has continued to rise up the ranks throughout her career, becoming the first woman to hold a position as Boeing 787 Lead Check Airman at AA.

116. Pauwels suffered an adverse employment action when AA denied her request for an accommodation.

117. Pauwels was subject to the adverse employment decisions above on account of her sex.

118. Pauwels has suffered damages because of AA's discrimination.

119. Any reason that AA would give for its actions would be not legitimate or non-discriminatory, and would be pretext to cover up AA's discrimination of Pauwels

120. AA was aware of and had not objected to similar accommodations for male pilots that allowed the pilots to maintain their statuses while they were unable to work due to medical issues and disabilities.

121. Pauwels was subject to the adverse employment decisions above on account of her Sex.

**COUNT IX**
**Retaliation as against Defendant AA**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000(e),** *et seq.*

122. Pauwels hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

123. Pauwels is an "employee" as the term is defined in 42 U.S.C. § 2000e *et seq*.

124. AA is an "employer" as the term is defined in 42 U.S.C. § 2000e *et seq*.

125. To prevail on an unlawful retaliation claim, Pauwels must establish: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Thomas v. Trege*, 913 F.3d 458, 463 (5th Cir. 2019).

126. Pauwels engaged in protected conduct when she filed a charge of discrimination against AA in 2012.

127. Pauwels engaged in protected conduct when Pauwels was a witness in a fellow female pilot's case regarding gender discrimination by three male Check Airmen.

128. Pauwels engaged in protected conduct when she filed a charge of discrimination against AA in June 2022.

129. AA took adverse employment actions against Pauwels when AA denied her request for an accommodation.

130. There is a causal connection between Pauwels' protected activity and AA's adverse employment actions.

131. AA was aware of Pauwels' protected conduct.

132. AA failed to redact Pauwels' name in the investigation hearing notice sent to Darrah.

133. The denial of Pauwels' accommodation occurred after Pauwels filed EEOC charges in June 2022.

134. Pauwels has suffered damages as a result of AA's retaliation.

## PRAYER FOR RELIEF

Based on the foregoing, Pauwels respectfully requests that the Court enter judgment in her favor and award to her the following relief:

a. Legal and equitable relief, including granting her accommodation request;

b. Economic, compensatory, punitive, and liquidated damages;

c. Attorney's fees and costs;

d. Pre-judgment interest; and

e. Any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Linda Pauwels demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

THE EMPLOYMENT LAW GROUP PC

*/s/ R. Scott Oswald*
R. Scott Oswald
Washington DC. Bar No. 458859
soswald@employmentlawgroup.com
Adam Augustine Carter
Washington DC Bar No. 437381
acarter@employmentlawgroup.com

1717 K. St., NW, Ste. 1110
Washington D.C. 20006
(202) 261-2803
(202 261-2835 (facsimile)

**GARDNER HAAS PLLC**

<u>*/s/     Kenneth N. Hickox*</u>
Kenneth N. Hickox, Jr.
State Bar No. 24025194
kh@garnderhaas.com

2501 N. Harwood St. Suite 1250
Dallas, TX 75201
Telephone: (214) 712-8247

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 5, 2024, I served a true and correct copy of the foregoing on the following counsel of record for the defendant via electronic mail:

Greg Dimmick, Esq.
Texas Bar No. 24028303
Allied Pilots Association
14600 Trinity Blvd., Suite 500
Fort Worth, Texas 76155-2512
gdimmick@alliedpilots.org
***Attorney for Defendant***

                                        */s/ Adam Augustine Carter*
                                        Adam Augustine Carter