UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LINDA PAUWELS, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | |
| § | Case No. 4:23-cv-00851-O | |
| ALLIED PILOTS ASSOCIATION & § | | |
| AMERICAN AIRLINES, INC., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant American Airlines, Inc.'s Motion to Dismiss and Brief in Support (ECF No. 37); Plaintiff's Response (ECF No. 38); and Defendant's Reply (ECF No. 39). After examining the relevant authorities and arguments, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.

**I.    BACKGROUND**[1]

Plaintiff became a pilot at American Airlines ("Defendant") in 1988. All American Airlines pilots are represented by a union, the Allied Pilots Association ("union").[2] In 2015, after lengthy negotiations, the union and American Airlines entered into a Joint Collective Bargaining Agreement ("JCBA") that governs the terms and conditions of employment for American Airlines pilots.[3] The JCBA also addresses, among other things, seniority, working hours, scheduling, and the work various categories of pilots may perform.[4]

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Sec. Am. Civ. Compl., ECF No. 25. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).
[2] Allied Pilots Association is also a defendant in this litigation but did not file a motion to dismiss Plaintiff's Second Amended Complaint, so "Defendant" in this Order refers only to American Airlines.
[3] Johnson Aff. ¶ 2, App. 7–8, ECF No. 35.
[4] *Id.*

1

Plaintiff was diagnosed with an endocrine autoimmune condition in or around 2004. She consequently took medical leave from 2004 until 2012.

In the years since her return to work, Plaintiff has been involved in several employment disputes with Defendant and the union. Plaintiff filed her first gender-discrimination complaint with the Equal Opportunity Employment Commission ("EEOC") in 2012, which resulted in a settlement with the union and Defendant in 2016. She was exposed as a witness in a separate sex-discrimination investigation when Defendant failed to redact her name from paperwork, and subsequently was questioned by a union representative about her involvement as a witness. In another instance, she was falsely accused of violating her employment contract when she accepted an assignment while purportedly on leave. And, as recently as September 13, 2022, Plaintiff settled another EEOC complaint with Defendant.

As a result of these disputes, Plaintiff has experienced an exacerbation of her underlying auto-immune condition and most recently took medical leave from January to November 2022. On or around July 1, 2022, Plaintiff submitted her first accommodation request to her managing director. Defendant advised Plaintiff to submit her accommodation request through its centralized accommodations portal, which she did on July 19, 2022.[5]

Specifically, Plaintiff requested an accommodation for "scheduling flexibility while maintaining the Check Airman qualifications she already had." Plaintiff became a check airman in 2015. A check airman is a pilot authorized by the airline as well as the Federal Aviation Administration to conduct training and evaluation of line pilots (a line pilot's main duty is to transport cargo and passengers). Check airmen are required to work a minimum of 16 days per month, and their schedules are set by management.[6] By contrast, line pilots' schedules are

---

[5] Alvaredo Aff. ¶ 6, App. 2–3, ECF No. 35.
[6] Johnson Aff. ¶ 7, App. 9–10, ECF No. 35.

N/A

Case 4:23-cv-00851-O   Document 55   Filed 10/10/24   Page 3 of 20   PageID 689

determined through a bidding system based on seniority, which affords senior pilots like Plaintiff flexibility to choose their schedules.[7]

Jessica Alvaredo, a member of Defendant's Accommodations Team, was informed that Plaintiff's request was for a "hybrid position" and was not authorized by the JCBA.[8] Accordingly, on July 27, 2022, Alvaredo informed Plaintiff that Defendant would be unable to grant her accommodation request because it violated the JCBA.[9] In an email on August 1, 2022, Alvaredo presented Plaintiff with two alternative accommodations, which Plaintiff did not respond to.[10] Plaintiff asserts those alternatives were not accommodations *per se*, but were positions she could have taken regardless, by virtue of seniority under the JCBA.[11]

Also during Summer 2022, Captain Alan Johnson, Defendant's Managing Director of Flight Training and Standards, had a verbal conversation with Plaintiff regarding her requested accommodation.[12] He told her he did not believe her accommodation would be granted, because it violated the JCBA and because Defendant does not grant accommodations that would be a violation of the JCBA.[13]

On or around November 21, 2022, based on a union attorney's information that the union would not object to (and presumably support) Plaintiff's accommodation request, Plaintiff returned from medical leave and underwent training to regain her check airman qualifications.[14]

On April 20, 2023, Plaintiff had an in-person meeting with Captain Alan Johnson and Jessica Alvaredo to discuss Plaintiff's accommodation request. They informed Plaintiff that

---

[7] *Id.* at. ¶ 5.
[8] Alvaredo Aff. ¶ 7, App. 2, ECF No. 35.
[9] *Id.*
[10] *Id.*
[11] Pl.'s Memo. Opp. Def.'s Mot. 6, ECF No. 38.
[12] Johnson Aff. ¶ 15, App. 12, ECF No. 35.
[13] *Id.*
[14] Plaintiff does not explain when or why she lost the check airman qualifications that she earned in 2015.

3

Defendant decided to deny her request after the union advised that it no longer supported Plaintiff's accommodation. At the conclusion of the meeting, Plaintiff asked to be put on reserve duty as a line pilot because she was unable to abide by the current check airman schedule and its required minimum work of 16 days per month.[15] As a result, Plaintiff lost her check airman qualification.

On April 26, 2023, Plaintiff emailed Johnson and Alvaredo requesting that the decision be communicated to her in writing.[16] To this day, she has not received a written response.

Plaintiff identifies two male pilots who have been allowed to maintain their qualifications while they were unable to work due to medical issues and disabilities.

Plaintiff initiated this lawsuit first against the union[17] and later amended her complaint to bring claims against Defendant, American Airlines, for unlawful failure to accommodate in violation of the Americans with Disabilities Act of 1990 ("ADA"); discrimination on the basis of disability in violation of the ADA; retaliation in violation of the ADA; discrimination on the basis of sex in violation of Title VII; and retaliation in violation of Title VII.[18] Defendant now moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[19]

## II.   LEGAL STANDARDS

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): a "facial attack" and a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A

---

[15] *Id.* at ¶ 16.
[16] *Id.* at ¶ 18.
[17] Pl.'s First Am. Compl., ECF No. 11.
[18] Pl.'s Sec. Am. Civ. Compl., ECF No. 25.
[19] Def.'s Mot. to Dismiss, ECF No. 37.

facial attack challenges jurisdiction based solely on the pleadings. *Id.* When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction. *Id.* By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence, such as affidavits, that contradicts the jurisdictional allegations in the complaint. *Id.* In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.*

"It is well settled that on a 12(b)(1) motion the court . . . may even resolve issues of contested facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Because at issue in a 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413.

Because a 12(b)(1) motion concerns a court's power to hear the case, when a 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the 12(b)(1) motion must be addressed first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

5

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 570). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation marks omitted).

**III.   ANALYSIS**

In her Second Amended Complaint, Plaintiff brought three ADA claims: (1) failure to accommodate, (2) disability discrimination, and (3) retaliation; and two Title VII claims: (4) sex discrimination, and (5) retaliation.[20] Defendant now moves to dismiss each claim under Rule 12(b)(1) for preclusion under the Railway Labor Act ("RLA"). Alternatively, Defendant moves to dismiss three of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim; namely, disability discrimination, disability retaliation, and sex retaliation.

Having reviewed the parties' briefing, evidence, and applicable law, the Court determines that, at this stage of the proceedings, Plaintiff has proven by a preponderance of the evidence that the Court has subject matter jurisdiction with respect to all claims. *See Paterson*, 644 F.2d at 523. However, the Court finds that the three claims Defendant moves to dismiss under Rule 12(b)(6) fail to state a claim upon which relief can be granted.

**A.  RLA Preclusion**

The Court has subject matter jurisdiction over Plaintiff's claims because the adjudication of her factual questions is not "conclusively resolved" by interpreting the JCBA. *See Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305 (1989).

The RLA, which was amended in 1936 to cover the airline industry, sets up a mandatory arbitral mechanism to handle certain grievances arising out of collective-bargaining agreements. 45 U.S.C. § 151 *et seq.*; *see Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 248 (1994). The collective-bargaining process, which "lies at the core of our national labor policy," is "aimed at effecting workable and enforceable agreements between management and labor." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977). "A collective bargaining agreement is an effort

---

[20] Pl.'s Sec. Am. Civ. Compl., ECF No. 25.

to erect a system of industrial self-government." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960). It "covers the whole employment relationship," including the rights and duties of employees and management. *Id.* at 578–79. "The grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Id.* at 580.

In 1972, the Supreme Court clarified that disputes classified as "minor" disputes must be resolved in arbitration before the Railway Labor Board, depriving federal and state courts of jurisdiction over such claims. *See Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 322 (1972) (dispelling "the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses"). In practical terms, if a dispute brought before a court is a "minor" dispute, then the RLA precludes or preempts that claim. *Compare Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (RLA preclusion) *with Norris*, 512 U.S. at 246 (RLA preemption).

A "minor" dispute "grow[s] out of grievances or out of the interpretation or application of [collective-bargaining] agreements." 45 U.S.C. § 153(i). The Supreme Court has further clarified that a dispute is "minor" if it "may be *conclusively resolved* by interpreting the existing agreement." *Consol. Rail Corp.*, 491 U.S. at 305 (emphasis added). "To state that a claim can be conclusively resolved by interpreting a CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Carmona*, 536 F.3d at 348 (internal quotations and citation omitted).

The Fifth Circuit in *Carmona v. Southwest Airlines Company* held that a male flight attendant's allegations of Title VII sex discrimination and ADA disability discrimination were not precluded by the RLA. *Id.* at 351. The Fifth Circuit did not *per se* shield Title VII and ADA claims

8

from the RLA's preclusive sweep. *Id.* at 351. Rather, it considered whether the dispute could be "conclusively resolved" by interpreting the CBA and decided that the factual allegations contained in those claims did not require an interpretation of the CBA. *Id.* The court interpreted the plaintiff's allegations to mean that "CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory." *Id.* at 349. Therefore, it concluded that provisions of the CBA were relevant to the plaintiff's claims, but not dispositive of them. *Id.*

Plaintiff's claims here are based on two reasons: Defendant's denial of her accommodations and Defendant's motives for denying her request. In her failure-to-accommodate claim, she alleges that Defendant rejected her accommodations, without explanation, neglecting its duty under the ADA to engage in interactive dialogue to establish reasonable accommodations.[21] In her discrimination claims, she alleges that other similarly situated male pilots were granted the accommodations that she was denied.[22] And finally, she alleges that she was retaliated against for requesting accommodations and for initiating or participating in other proceedings against Defendant.[23]

Defendant maintains that it denied Plaintiff's accommodation because she requested a position that would have violated the JCBA.[24] Defendant cites to cases like *Pritchard v. American Airlines, Inc.* for the proposition that an accommodation that violates a CBA is unreasonable.[25] *See* 708 F. Supp. 3d 861, 867 (N.D. Tex. 2023) ("Absent extraordinary circumstances, it is unreasonable to require companies to violate binding CBAs to accommodate disabled employees."). Accordingly, Defendant argues that the JCBA is dispositive because the Court

---

[21] Pl.'s Sec. Am. Civ. Compl. ¶¶ 36–38, 82–88, ECF No. 25.
[22] *Id.* at ¶¶ 43, 120; Pl.'s Memo. Opp. Def.'s Mot. 22, ECF No. 38.
[23] Pl.'s Sec. Am. Civ. Compl. ¶¶ 99–109, 122–34, ECF No. 25.
[24] *See, e.g.,* Def.'s Mot. Dismiss 1, 20, ECF No. 37.
[25] *Id.* at 21.

would not be able to reach the merits of Plaintiff's claim—the reasonableness of the accommodation—without interpreting specific provisions in the JCBA.[26] Further, to pose a factual attack on jurisdiction, Defendant submits into evidence relevant portions of the JCBA, employee declarations, and email exchanges regarding Plaintiff's accommodation request.[27]

Because Defendant factually attacks jurisdiction by attaching exhibits, Plaintiff must show by a preponderance of the evidence that jurisdiction exists. *See Paterson*, 644 F.2d at 523. To do so, Plaintiff need only convince the Court that adjudication of her factual questions does not depend on the JCBA for resolution. *See Carmona,* 536 F.3d at 351 n.25 (citing *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654 (7th Cir. 2001)). And the Court finds that she satisfies her burden.

While the precise accommodation that Plaintiff sought is contested, the Court's analysis does not hinge on the resolution of that question. Plaintiff maintains that she wanted "scheduling flexibility" (*i.e.*, a reduced workload to manage fatigue from her autoimmune condition, while maintaining her check airman certification that allowed her to train other pilots in flight simulators).[28] But in Defendant's words, Plaintiff sought a "hybrid position," working as a line pilot, flying two to three trips per month, while continuing to conduct trainings in flight simulators using her check airman certification.[29] In any event, it appears that Plaintiff requested some variation of these two accommodations,[30] and her request was denied.[31]

Defendant claims that its hands were tied by the JCBA—that is, it could not grant Plaintiff an accommodation without violating the terms of the JCBA.[32] But the record does not support this

---

[26] *Id.*
[27] App. Supp. Def.'s Mot. Dismiss, ECF No. 35.
[28] *See, e.g.,* Pl.'s Memo. Opp. Def.'s Mot. 18, ECF No. 38.
[29] Alvaredo Aff. ¶ 9, App. 2, ECF No. 35; Johnson Aff. ¶ 16, App. 7, ECF No. 35.
[30] *See* Rosenthal Aff., App. 135–36, ECF No. 35.
[31] Pl.'s Sec. Am. Civ. Compl. ¶ 37, ECF No. 25.
[32] *See, e.g.,* Def.'s Mot. to Dismiss 10, ECF No. 37; Def.'s Reply 5, ECF No. 39.

claim. In an email between Defendant and the union, Defendant presented the union with the "two different types of accommodations" discussed above, and asked "which, if any, [it] would support as a deviation from the [JCBA]."[33] The union responded that it would not object to either (subject to a few qualifications) and then reversed its position on the first accommodation (the hybrid position) in a follow-up email several days later.[34] But the union told Defendant that it *would* support the second accommodation—that is, "it would [a]llow [Plaintiff] to work as a [check airman] with a reduced monthly schedule less than the contractually-allowed 16-day month."[35]

And yet, Defendant now argues that "the only way [Plaintiff] could work less than 16 days per month was if she no longer remained [in her check airman role]."[36] If the union would have permitted it, and if Plaintiff's allegation is true that other male pilots were "allowed . . . to maintain their statuses while they were unable to work,"[37] then Defendant cannot now claim that this accommodation is foreclosed by the JCBA. Indeed, the very premise of Defendant's question to the union (*i.e.*, which, if any, deviations from the JCBA the union would permit) suggests that Defendant *is* able to depart from the JCBA when granting accommodations. Thus, the JCBA does not "conclusively resolve" whether accommodations are granted.

Defendant leans heavily on *Pritchard* to support its argument that the JCBA is dispositive of Plaintiff's claims. But *Pritchard* is distinguishable in a few ways. In that case, the union filed a grievance against the airline company for violating the JCBA by exempting disabled employees from mandatory overtime without considering seniority. 708 F. Supp. 3d at 863. As part of its settlement, the airline agreed it would accommodate disabled employees "in a way that didn't

---

[33] *See* Rosenthal Aff., App. 135–36, ECF No. 35.
[34] *Id.* at App. 134–35.
[35] *Id.* at App. 135–36.
[36] *Id.*
[37] Pl.'s Sec. Am. Civ. Compl. ¶ 120, ECF No. 25.

11

violate the JCBA's seniority system." *Id.* The airline proceeded to withdraw the plaintiff's accommodations—and those of other similarly situated employees. *Id.* at 867. The plaintiff sued the airline for discrimination under the ADA, and the court held that it lacked jurisdiction to hear the claim. *Id.* at 868.

Unlike Plaintiff here, the plaintiff in *Pritchard* was not alone. He was treated the same as similarly situated employees based on an arbitration agreement, which had effectively disclaimed the "reasonableness" of the accommodation already (given the interference with the JCBA's seniority provisions and the rights of senior employees). With those issues off the table, the JCBA was dispositive of the issue. But here, Defendant's motivations in denying accommodations are still in dispute because Plaintiff raises possible evidence of disparate treatment between her and other named male employees.[38] And Defendant has not identified how Plaintiff's accommodation would interfere with the rights of other employees under the JCBA.[39] At best, Defendant can only "retroactively proffer[]"[40] that violating the terms of the JCBA to accommodate Plaintiff would have caused "undue hardship,"[41] and thus, was its "non-discriminatory reason"[42] for denying accommodations.

Defendant explains that the Court will inevitably have to interpret the JCBA to analyze Defendant's proffered reason for denying Plaintiff's accommodation under the *McDonnell*

---

[38] Pl.'s Sec. Am. Civ. Compl. ¶¶ 46, 120, ECF No. 25.
[39] It is unclear whether a sheer violation of a CBA's terms, without more, is a reasonable basis to deny accommodations. The Supreme Court has held that an employer cannot be expected to grant an accommodation that would infringe on the rights of other employees. *See Trans World Airlines*, 432 U.S. at 81 ("It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others.").
[40] Pl.'s Memo. Opp. Def.'s Mot. 20, ECF No. 38.
[41] Def.'s Reply 6, ECF No. 39.
[42] Def.'s Mot. to Dismiss 20, ECF No. 37.

*Douglas* burden-shifting framework.[43] Defendant cites to the Fifth Circuit's decision in *Reece v. Houston Lighting & Power Company* for the proposition that "interpretation of the CBA is 'made necessary by an employer defense'" in discrimination and retaliation cases.[44] 79 F.3d 485, 487 (5th Cir. 1996). But the Fifth Circuit in *Carmona* declined to extend *Reece*. 536 F.3d at 350. In *Carmona*, the court disregarded the defendant's "proffered [ . . . ] non-discriminatory reason" in evaluating whether the CBA controlled the dispute, focusing instead on the *plaintiff's* allegations. *Id.* at 347–51. And it cited to its sister circuit in *Brown v. Illinois Central Railroad Company* for the contention that "an employer cannot ensure the preclusion of a plaintiff's claim merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim." *Id.* at n.21 (citing *Brown,* 254 F.3d at 654).

Heeding *Carmona*, the Court concludes that Defendant's *motive* for denying accommodations appears at the heart of each of Plaintiff's failure-to-accommodate, discrimination, and retaliation claims. Plaintiff alleges, among other things, that others received the accommodation she was denied,[45] that no real accommodation was ever offered to her,[46] and that Defendant did not offer an explanation for denying her request.[47] Accordingly, she shows "by a preponderance of the evidence" that "consideration of the CBA *as applied* to Title VII and the ADA—not interpretation of the CBA itself—is what is required to resolve [her] claims." *Carmona*, 536 F.3d at 349–50.

Therefore, the Court has jurisdiction to determine whether Plaintiff's civil rights under those statutes have been violated. *See id.* at 351 (finding as "further evidence" to support its holding

---

[43] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[44] *Id.* at 26–27.
[45] Pl.'s Sec. Am. Civ. Compl. ¶¶ 46, 120, ECF No. 25.
[46] Pl.'s Memo. Opp. Def.'s Mot. 6, ECF No. 38.
[47] Pl.'s Sec. Am. Civ. Compl. ¶¶ 36–38, 82–88, ECF No. 25.

that the plaintiff "allege[d] Title VII and ADA violations, as opposed to violations of the CBA itself"); *see also id.* at 348 ("To state that a claim can be 'conclusively resolved' by interpreting a CBA 'is another way of saying that the dispute does not involve rights that exist independent of the CBA.'" (citing *Norris*, 512 U.S. at 265)).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Because the Court has jurisdiction over Plaintiff's claims, the Court now analyzes whether Plaintiff plausibly states a claim for disability discrimination, disability retaliation, and sex retaliation. The Court concludes that Plaintiff does not and orders that those claims be **DISMISSED with prejudice**.

### 1. Count VI: ADA Disability Discrimination (42 U.S.C. § 12112)

Plaintiff's disability discrimination claim under the ADA fails. A *prima facie* case of disability discrimination requires a plaintiff to prove: (1) that she has a disability; (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision on account of her disability. *Zenor v. El Paso Healthcare Sys., Ltd*., 176 F.3d 847, 853 (5th Cir. 1999).

Defendant argues that Plaintiff fails to plead the third element—that Plaintiff was subject to an adverse employment decision *on account of* her disability.[48] In response, Plaintiff conclusively asserts that Defendant's alleged failure to engage in the interactive process is evidence of a causal connection.[49] But a failure to engage in the interactive process only constitutes adverse action; it does not establish that she suffered adverse action *because of* her disability. Nor can Plaintiff allege, as the basis for a causal connection, that she received less favorable treatment than non-disabled employees, because the male employees she claims received accommodations

---

[48] Def.'s Mot. to Dismiss 27–28, ECF No. 37.
[49] Pl.'s Memo. Opp. Def.'s Mot. 21–22, ECF No. 38.

had medical issues or disabilities themselves.[50] Plaintiff therefore contradicts or, at the very least, undermines her pleadings when she asks the Court to allow her to explore which of those men had disabilities and which did not.[51]

Accordingly, because Plaintiff fails to plead factual allegations showing that she was denied accommodations *because of* her disability, the Court **GRANTS** Defendant's Motion with respect to Plaintiff's disability discrimination claim.

### 2. Count VII: ADA Retaliation (42 U.S.C. § 12112)

Plaintiff's claim for disability retaliation under the ADA also fails. The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To establish a *prima facie* case of unlawful retaliation under the ADA, the plaintiff must show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 303–04 (5th Cir. 2020).

"A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.

---

[50] Pl.'s Sec. Am. Civ. Compl. ¶ 43, ECF No. 25.
[51] Pl.'s Memo. Opp. Def.'s Mot. 22, ECF No. 38.

1997). But such temporal proximity must generally be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Defendant argues that Plaintiff fails to adequately plead a causal connection between Plaintiff's protected activity and the adverse action taken against her.[52] Plaintiff alleges that Defendant was "aware of" Plaintiff's request for accommodation.[53] But it is not enough for the employer to simply be aware of the protected activity. Plaintiff must show that the denial of accommodations is *based in part on* such awareness. *Medina,* 238 F.3d at 684. Otherwise, any employer who denies an employee's accommodation request, and is thus aware of it, may be liable for retaliation.

Plaintiff appears to believe that "the chronology of [Plaintiff's] request for accommodation, [Defendant's] protracted delay in responding, and [Defendant's] subsequent denial of her request without providing either an explanation or engaging in an interactive process"[54] is evidence of retaliation. But Plaintiff does not explain how this "chronology" suffices to show "very close" temporal proximity, because the request for accommodation and subsequent denial were separated by a period of nine months. *C.f. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (holding that a five-month lapse, without other evidence of retaliation, is not close enough). And Plaintiff does not otherwise make an argument for the Court to consider. Even assuming Plaintiff's argument is that Defendant acted in bad faith in denying accommodations, the Court finds that these allegations "stop[] short of the line" showing "plausibility of entitlement to relief" because such facts are "merely *consistent with* a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (emphasis added) (internal quotation marks omitted).

---

[52] Def.'s Mot. to Dismiss 29, ECF No. 37.
[53] Pl.'s Sec. Am. Civ. Compl. ¶ 106, ECF No. 25.
[54] Pl.'s Memo. Opp. Def.'s Mot. 18, ECF No. 38.

Therefore, because Plaintiff fails to adequately plead a causal connection to state a claim for retaliation, the Court **GRANTS** Defendant's Motion to Dismiss with respect to Plaintiff's disability retaliation claim.

### 3. Count IX: Title VII Retaliation (42 U.S.C. § 2000(e))

Plaintiff's sex retaliation claim under Title VII likewise fails. Title VII makes it unlawful for an employer "to discriminate against any of [its] employees. . . . because [she] has made a charge. . . . or participated in any manner in an investigation of discrimination." 42 U.S.C. § 2000e. Thus, to successfully plead a claim of retaliation under 42 U.S.C. § 2000, Plaintiff must demonstrate three elements: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1000 (internal quotation marks and citation omitted). The requirements to establish a causal connection for retaliation under Title VII are the same as they are under the ADA. *See Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (applying the same legal standard to Title VII and ADA retaliation claims).

Defendant argues that Plaintiff fails to properly plead the third element—that Plaintiff was subject to an adverse employment decision on account of her disability.[55] Like her ADA retaliation claim, Plaintiff appears to assert that a causal connection exists "based on chronology of [Plaintiff's] EEO complaints, request for accommodation, [Defendant's] refusal to engage in an interactive process and protracted delay in responding to Plaintiff's request for accommodation, and [Defendant's] subsequent denial of accommodation."[56]

---

[55] Def.'s Mot. to Dismiss 29, ECF No. 37.
[56] Pl.'s Memo. Opp. Def.'s Mot. 19, ECF No. 38.

17

The Court's analysis is the same here as it was under the ADA. Plaintiff does not explain how this "chronology" suffices to show "very close" temporal proximity, because the June 2022 EEO complaint and subsequent denial of her request for accommodations were separated by a period of ten months. *C.f. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).

And Plaintiff weakens her own account when she asserts that she has plausibly pleaded a claim for sex retaliation because "with respect to [the union], [Plaintiff] has been in a near-constant state of protected activity."[57] American Airlines—the relevant Defendant in this instant dispute—stands on its own. Plaintiff's protected activity with respect to the union and any evidence of retaliation on the part of the union do not allow the Court to infer retaliation on the part of Defendant. And even assuming that Defendant acted with bad faith when it denied Plaintiff's accommodations, the Court finds that these allegations "stop[] short of the line" showing "plausibility of entitlement to relief" because such facts are "merely *consistent with* [Defendant's] liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (emphasis added) (internal quotation marks omitted).

Therefore, because Plaintiff fails to adequately plead a causal connection to state a claim for retaliation, the Court **GRANTS** Defendant's Motion to Dismiss with respect to Plaintiff's sex retaliation claim.

## IV.    LEAVE TO AMEND

Plaintiff requests "leave to amend her Complaint further if deemed necessary by the Court,"[58] but the Court does not find it necessary. If a plaintiff's pleadings are deficient under Rule 12(b)(6), a district court should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) even "evinces a bias in favor of granting leave to amend." *Herrmann*

---

[57] *Id.* at 30.
[58] Pl.'s Memo. Opp. Def.'s Mot. 23, ECF No. 38.

*Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002). But "leave to amend under Rule 15 is by no means automatic." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). One of the permissible reasons for denying a request for leave to amend is if the amendment would be futile. *Id.* Here, any proposed amendments would be futile, and Plaintiff does not otherwise propose how she would amend her Complaint.

With respect to her disability discrimination claim, Plaintiff states that she "should be permitted to amend [her Complaint] to add allegations of fact that she was treated less favorably than non-disabled union members."[59] But this is the second motion to dismiss identifying this deficiency (*i.e.*, that Plaintiff fails to identify non-disabled comparators).[60] And despite having awareness of it, Plaintiff did not correct it in her Second Amended Complaint. Plaintiff now claims she "ought to be able to discover which of these men had disabilities and which did not."[61] But this is barred by *Twombly*. 550 U.S. at 561 (rejecting a pleading standard based on "the prospect of unearthing direct evidence" or in which "a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery").

Likewise, concerning Plaintiff's retaliation claims, she does not propose how she would cure any deficiencies. Plaintiff was "aware of [Defendant's] objections to [her] complaint as written (because the objections appeared in [Defendant's] principal motion)," but she does "not demonstrate to the [C]ourt how [she] would replead [a causal connection] more specifically if given the opportunity." *See Goldstein*, 340 F.3d at 254–55.

Accordingly, the Court denies Plaintiff's request for leave to amend.

---

[59] *Id.* at 2.
[60] *See* Mem. Op. & Order 14–15, ECF No. 19.
[61] Pl.'s Memo. Opp. Def.'s Mot. 22, ECF No. 38.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant American Airlines, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. The Court holds that it has subject matter jurisdiction over all claims under Rule 12(b)(1), but it **DISMISSES with prejudice** Counts VI (ADA discrimination), VII (ADA retaliation), and IX (Title VII retaliation) for failure to state a claim under Rule 12(b)(6).

**SO ORDERED** on this **10th day** of **October, 2024**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE